**UNITED STATES DISTRICT COURT**

**DISTRICT OF CONNECTICUT**

UNITED STATES OF AMERICA  :     3 : 03CR00198(RNC)

VS.                                           :

NORMAN WIGGINS              : JANUARY 23, 2005

**<u>DEFENDANT'S SENTENCING MEMORANDUM</u>**

The defendant, Norman Wiggins, submits this memorandum as an aid to the court in his

sentencing scheduled for January 27,2006. On February 18, 2005, Mr. Wiggins plead

guilty to possession with intent to distribute heroin, in violation of 21 U.S.C. § 841(a)(1),

(b)(1)(C). Mr. Wiggins has been in state custody at the Cheshire Correctional Institution

since June 24, 2003 for conduct not related to the instant offense. According to the pre-

sentence report and based on a total offense level of 29 and a criminal history category of

VI under the Federal Sentencing Guidelines, Mr. Wiggins now faces a guideline

imprisonment range of 151 to 188 months.

Through this memorandum, Mr. Wiggins seeks a downward departure from the

sentencing guideline range. His requested downward departure is based on the following

factors: (1) the Federal Sentencing Guidelines are no longer mandatory, but merely

advisory after the United States Supreme Court ruling in <u>United States v. Booker</u>, 543

U.S. 220 (2005), which allows the sentencing judge to use his or her discretion in

determining whether the guideline sentence is appropriate given a certain set of facts; (2)

Mr. Wiggins desires to continue drug rehabilitation to become a better person and live a

1

better life; (3) Mr. Wiggins continues to find steady work to support himself and his

family; (4) Mr. Wiggins has significant family responsibilities in that he has three

children; (5) Mr. Wiggins criminal history exaggerates the seriousness of his prior

conduct in that his prior offenses were minor and were all related to his serious personal

addiction to heroin and Mr. Wiggins was not deeply involved in the "Knock Out" heroin

operation; he was merely a customer of the organization and only sold heroin to support

his own personal addiction.

## BACKGROUND

The relevant facts are summarized as follows as taken from the police reports: On June

23, 2003, the New Haven Police Department began surveillance in the area of 869

Quinnipiac Avenue, New Haven. At approximately 7:15 pm, Norman Wiggins was

observed walking towards the 869 Quinnipiac Avenue, the residence of Edison Vidro.

Five minutes later, Mr. Wiggins left the residence of Mr. Vidro, walked North on

Quinnipiac Avenue, and then entered the passenger side of a Ford Explorer occupied by

three other passengers. As a result of intercepted phone conversations and the

observations made by surveillance unites, this car was stopped by the New Haven Police

Department, and all four passengers were removed from the vehicle. After a search of the

car, 49 glassine bags containing a white powder were recovered. The powder tested

positive for heroin. Another 15 bags containing a brown tar like substance were also

found in the car and this substance also tested positive for heroin.

At this time, Mr. Wiggins along with the other passengers, were placed under arrest and charged with possession of narcotics, possession of narcotics with intent to sell, possession of narcotics with intent to sell within 1500 feet of a school, conspiracy to possess narcotics, and possession of drug paraphernalia. All four defendants were transported to the New Haven Police Department for processing.

## LAW

As a result of the Supreme Court's decision in United States v. Booker, 125 S. Ct. 738 (2005), the sentencing guidelines are now "effectively advisory" in all cases. Id. at 757. The result is that a district court must now "consider Guidelines ranges," but may "tailor the sentencing in light of other statutory concerns as well." _Id._ The United States Sentencing Guidelines operate in the context of § 3553 of Title 18 of the United States Code. Section 3553(a) contains various "factors," one of which is the Sentencing Guidelines and the guideline range calculated pursuant to them that must now be considered in determining a sentence. Section 3553(a) is comprised of two distinct parts: the so-called "sentencing mandate" contained in the prefatory clause of Section 3553(a), and the "factors" to be considered in fulfilling that mandate. The sentencing mandate is an overriding principle that limits the sentence a court may impose.

The basic mandate and overriding principle of Section 3553(a) requires a district court to impose a sentence "*sufficient, but not greater than necessary*," to comply with the four purposes of sentencing set forth in Section 3553(a)(2):

(1) retribution ("to reflect seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense");

(2) deterrence ("to afford adequate deterrence to criminal conduct");

(3) incapacitation ("to protect the public from further crimes of the defendant"); and

(4) rehabilitation ("to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner").

18 U.S.C. § 3553(a)(2).

The sufficient-but-not-greater-than-necessary requirement sets an independent upper limit on the sentence a court may impose. In determining what sentence is sufficient but not greater than necessary to comply with the Section 3553(a)(2) purposes of sentencing, the court must consider several factors listed in Section 3553(a). These are (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the kinds of sentences available; (3) the guidelines and policy statements issued by the Sentencing Commission, including the now **non-mandatory** guideline range; (4) the need to avoid unwarranted sentencing disparity; and (5) the need to provide restitution where applicable. 18 U.S.C. §3553(a)(1), (a)(3)-(7). Neither the statute itself nor *Booker* suggests that any one of these factors is to be given greater weight than any other factor. However, what is clear is that all of these factors are subservient to Section 3553(a)'s mandate to impose a sentence not greater than necessary to comply with the four purposes of sentencing.

In the framework of 18 U.S.C. § 3553, the sentencing guidelines set forth a non-exhaustive list of factors that can constitute a basis for departure. United States v. Rogers, 972 F.2d 489, 492 (2d Cir. 1992); U.S.S.C. Guidelines ch. 5, pt. K(2). Because the sentencing guidelines were not intended to encompass every possible sentencing scenario, the guidelines permit downward departures both for factors enumerated in the sentencing guidelines and for mitigating factors that are not specifically addressed in the sentencing guidelines but that are present in a particular case. Rogers, 972 F.2d at 492-93; United States v. Jagmohan, 909 F.2d 61, 65 (2d Cir. 1990); U.S.S.C. Guidelines ch. 1, pt. A(4)(b).

Furthermore, the district court is afforded substantial discretion in determining whether a factor is appropriate for a downward departure. United States v. Galante, 111 F.3d 1029, 1035-36 (2d Cir. 1997); United States v. Rioux, 97 F.3d 648, 663 (2d Cir. 1996); United States v. Broderson, 67 F.3d 452, 459 (2d Cir. 1995). A downward departure is appropriate if a mitigating factor "of a kind, or to a degree, not adequately taken into consideration" in the guidelines exists in the case and the mitigating factors can serve as the basis for the departure either individually or collectively. U.S.S.C Guidelines ch. 5, pt. K(2). See also Rioux, 97 F.3d at 663.

The Second Circuit in United States v. Crosby, applied the holding from Booker, stating that the guidelines are no longer mandatory. United States v. Crosby, 397 F.3d 103, 113 (2d Cir. 2005). The court explained that it could identify several essential aspects of the Booker holding which concern the selection of sentences:

First, the Guidelines are no longer mandatory. Second, the sentencing judge must consider the Guidelines and all of the other factors listed in section 3553(a). Third, consideration of the Guidelines will normally require determination of the applicable Guidelines range, or at least identification of the arguably applicable ranges, and consideration of applicable policy statements. Fourth, the sentencing judge should decide, after considering the Guidelines and all the other factors set forth in section 3553(a), whether (i) to impose the sentence that would have been imposed under the Guidelines, i.e., a sentence within the applicable Guidelines range or within permissible departure authority, or (ii) to impose a non-Guidelines sentence. Fifth, the sentencing judge is entitled to find all facts appropriate for determining either a Guidelines sentence or a non-Guidelines Sentence.

Id.

Essentially, the sentencing judge is to consider all of the factors listed in section 3553(a) and all applicable policy statements when determining a sentence, not just the applicable guideline range. Id. at 111. The sentencing judge should still "consider" the applicable Guidelines range, but the court did not "endeavor to determine what degree of consideration is required, or, to put it another way, what weight the sentencing judge should normally give to the applicable Guidelines range." Id. at 113. Instead, the court stated that the discretion is left to the sentencing judge to use what he or she believes to be reasonable to faithfully perform his or her statutory duties. See id.

## **ARGUMENT**

According to the pre-sentence report, Mr. Wiggins faces a guideline imprisonment range

of 151 to 188 months for pleading guilty to possession with intent to distribute heroin.

This is an extraordinary amount of time for the crime committed especially in light of the

fact that Mr. Wiggins was a mere customer of the "Knock Out" organization according to

the pre-sentence report. <u>See</u> Pre-Sentence Report, para. 12. Furthermore, the other

"customers" of the organization who were charged with the same crime were given much

lighter sentences. The following "customers," Christopher DeMartin, Kimberly A.

Andrews, Anthony Piccirillo, and Denise Tarka, were all charged with possession with

intent to distribute heroin in violation of 21 U.S.C. § 841(a)(1), (b)(1)(C). Whereas Mr.

Wiggins faces a guideline imprisonment of 151-188 months, Christopher DeMartin was

merely sentenced to five years probation, Kimberly A. Andrews to three years of

probation, Anthony Piccirillo to five years probation, and Denise Tarka to three years

probation.

When looking at the Federal Sentencing Guidelines, Mr. Wiggins had a base offense

level of 16 for the possession of 10 grams but less than 20 grams of heroin. Due to his

status as a career offender, however, his base offense level rose to a staggering 32, and

even after a 3 point reduction for acceptance of responsibility, Mr. Wiggins was left with

a total offense level of 29 which when combined with his level VI Criminal History

Category, left him with a suggested guideline range of 151-188 months imprisonment.

In the aftermath of the <u>Booking</u> holding, however, this guideline range of 151-188

months should be "considered," but is in no way mandatory. Instead, the sentencing

judge should take into consideration the other statutory factors when deciding a fair term

of imprisonment such as the nature and circumstances of the offense and the history and characteristics of the defendant and should then impose a sentence which is sufficient, but **not** greater than necessary to comply with the four purposes of sentencing set forth in Section 3553(a)(2),

(1) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

(2) to afford adequate deterrence to criminal conduct;

(3) to protect the public from further crimes of the defendant; and

(4) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

In this case, Mr. Wiggins respectfully asks the court to go below the recommended minimum sentence of 151 months on the guideline sheet, because a lower sentence would be sufficient to comply with the above four purposes.

I. Factors to Consider:

The following information is taken from the pre-sentence report and was gathered following an interview with the Mr. Wiggins, defense counsel, interviews with respective collateral personnel, and a review of provided documents. Pursuant to Section 5K2.0 commentary of the Federal Sentencing Guidelines, the court can depart downward from the Federal Sentencing Guidelines for a combination or totality of circumstances when an individual basis is not found sufficient by itself. See United States v. Tejeda, 146 F.3d 84 (2d Cir. 1998).

   A. *Mr. Wiggins desires to continue drug rehabilitation to become a better person and live a better life.*

Mr. Wiggins has admitted that the weakest point in his life has been his drug usage. In 2002, the year before Mr. Wiggins entered the state prison system, he attended a detox facility in New Haven to help him with his drug addiction problems. He stayed there for one week and received methadone maintenance treatment, and when he was discharged, he participated in outpatient treatment. He has stated that he realizes how serious the instant offense is, and understands that he needs to leave that lifestyle behind if he is going to succeed in life. He looks forward to the day when he can see his children again and he hopes to be able to settle down and raise them. Mr. Wiggins believes that he can lead a good life and provide for his family by leaving his old life style behind.

B.  *Mr. Wiggins has found steady work in the past to support himself and his family, and hopes to do so in the future.*

Mr. Wiggins was employed at the Stop & Shop Supermarket Company in North Haven, Connecticut from 2000 to 2003 where he earned $15 per hour for his duties of stocking, taking inventory, and preparing orders for the store. Mr. Wiggins enjoyed this job immensely and hopes to return to this job upon his release from prison. Before this, Mr. Wiggins worked for BJ's in North Haven where his supervisor reported no problems with his employment. He has also worked part time for Elm Haven Construction in New Haven and Brescome Barton Inc. in North Haven. This history of steady employment is outside of the "heartland" for most offenders charged with narcotics offenses, particularly those engaged in narcotics dealing. In this case, Mr. Wiggins work history is indicative of

an individual who was not embedded in the narcotic trafficking culture, but instead, of a man who was struggling with a serious personal addiction to heroin and who sold drugs from time to time only to support his personal addiction because the hourly wage from his legitimate jobs were insufficient for that unfortunate purpose.

Regular employment of a defendant and emotional and financial support of the defendant's dependants has been found to possibly be sufficient rehabilitation to justify a downward departure from the Federal Sentencing Guidelines. See United States v. Bryson, 163 F.3d 742, 749 (2d Cir. 1998).

   C. *Mr. Wiggins has significant family responsibilities in that he has three children.*

The Federal Sentencing Guidelines allow for a downward departure in extraordinary circumstances based on a defendant's family ties and responsibilities. C.S.S.C Guidelines § 5H1.6. Mr. Wiggins has three children: Norman Wiggins III, age 14, Taylor Wiggins, age 10, and Ariana Wiggins, age 4. Norman Wiggins III now lives with Mr. Wiggins' grandmother because the whereabouts of the child's real mother are unknown.. Mr. Wiggins holds a strong and close bond with his son Norman and prior to his incarceration, he was an active participant in his son's life. He received regular visits with his son and called him daily to help him with his homework. Mr. Wiggins also paid child support every week to help support his son.

Mr. Wiggins' other two children live with their mother, Litara Mitchell. Mr. Wiggins was in a committed relationship with Ms. Mitchell for 14 years before his incarceration. Mr. Wiggins loves his children very much and stays as involved as he can in their daily lives.

Mr. Wiggins can not support his family while in prison and looks forward to being released so that he can once again work to support his family. A downward departure is warranted where the defendant's service of a sentence within the applicable guideline range will cause a substantial, direct, and specific loss of essential caretaking, or essential support to the defendant's family. C.S.S.C Guidelines § 5H1.6..

D. *Mr. Wiggins criminal history exaggerates the seriousness of his prior conduct in that his prior offenses were minor and were all related to his serious personal addiction to heroin. Furthermore, Mr. Wiggins was not deeply involved in the "Knock Out" heroin operation; he was merely a customer of the organization and only sold heroin to support his own personal addiction.*

One of the reasons why the recommended sentence for Mr. Wiggins under the Federal Sentencing Guidelines was so high was a result of his status as a career offender and his level VI Criminal History Category. Essentially, Mr. Wiggins past criminal history has driven his recommended sentence from 21-27 months (the recommended sentence for a base offense level of 16 which is the level for the crime Mr. Wiggins plead guilty to) to 151-188 months (the recommended level for a base level offense of 29 with a level VI Criminal History Category which was the recommended level for Mr. Wiggins after taking his past criminal history into account).

Mr. Wiggins would like to point out to the court, however, that most of his offenses in his criminal history are minor and are indisputably related to his serious drug addiction. Mr. Wiggins respectfully suggests that the sentencing guidelines in this matter overstate the

seriousness of his conduct and overstate his criminal history. Mr. Wiggins has accepted

responsibility and has pled guilty to possession with intent to sell heroin, and he does not

diminish or minimize the harm that his conduct has caused to society, his family, and to

himself. He is prepared to be sentenced to additional incarceration, but he maintains that

his involvement in selling heroin was only to further his own unfortunate personal

addiction, not to further the "Knock Out" organization. Mr. Wiggins was merely a

customer of the "Knock Out" organization, and was not a participant in the furtherance of

that organization.

Downward departures in sentencing are appropriate when the penalties of the sentencing

guidelines do not adequately consider the specific characteristics of a case and overstate

the seriousness of a defendant's conduct. See United States v. Restrepo, 936 F.2d 661,

667 (2d Cir. 1991) ("when offense level has been extraordinarily magnified by a

circumstance that bears little relation to the defendant's role," downward departure is

appropriate); United States v. Williams, 78 F. Supp. 2d 189, 193 (S.D.N.Y. 1999)(street

level drug dealers should not be sentenced in the "heartland" of significant trafficking

penalties). Downward departures are also appropriate when the defendant's criminal

history exaggerates the seriousness of the defendant's prior conduct. C.S.S.C Guidelines

§ 4A1.3.

In this case, the guidelines applicable to Mr. Wiggins overstate the seriousness of his

conduct and overstate the seriousness of his criminal history. Mr. Wiggins was a very

small player in the "Knock Out" organization. He was merely a "customer" and sold only

what he needed to further his own drug addiction. Additionally, his criminal history is

comprised of offenses which are inter-related to his drug addiction and do not evidence

an entrenched criminal disposition. Yet, under the guidelines, Mr. Wiggins has a level VI

Criminal History Category, a category reserved for the worst offenders in society, and he

faces more than ten years in prison. Mr. Wiggins is clearly not one of the worst offenders

in society, and his treatment under the guidelines is harsh and unnecessary to meet the

sentencing goals of 18 U.S.C. § 3553(a).

II. <u>A sentence below the recommended minimum of 151 months is sufficient to fulfill</u>
<u>the sentencing goals of retribution, deterrence, incapacitation, and rehabilitation.</u>

   A. *Retribution - to reflect the seriousness of the offense, to promote respect for the*
      *law, and to provide just punishment for the offense.*

Mr. Wiggins understands and expects that he will receive a lengthy prison term for the

crime which he has pled guilty to, but a sentence of 151-188 months is greater than

necessary to reflect the seriousness of the offense, to promote respect for the law, and to

provide just punishment for the offense. A sentence under 151 months would suffice to

reflect the seriousness of this offense. Mr. Wiggins will still serve a significant prison

term and he will suffer the punishment that is incumbent with confinement. He

understands the seriousness of his offense and is ready to accept responsibility by serving

time in prison. He, therefore, respects the law and is ready to receive the punishment for

his offense. In light of the relatively minor role that Mr. Wiggins played in the "Knock

Out" organization, however, the sentencing goal of a punishment that reflects the seriousness of the offense could be served with a sentence below 151 months.

B. *Deterrence - to afford adequate deterrence to criminal conduct.*

The sentencing goal of general deterrence also can be met with a sentence under 151 months. Mr. Wiggins has been incarcerated for the last two years and is ready to accept the rest of his sentence when given. A general deterrent message has clearly been sent to the community that the possession and distribution of illegal substances will not be tolerated, and a sentence of less than 151 months will inevitably still provide this deterrent effect.

C. *Incapacitation - to protect the public from further crimes of the defendant.*

Specific deterrence has also been achieved in this case and the public has been protected from further crimes of the defendant. Mr. Wiggins realizes the mistakes he has made in his life and before he was incarcerated, he spent a week in a detox facility to clean up his life. He looks forward to the day when he is released so that he can go back to work at Stop & Shop to provide for his children. Furthermore, he has already accepted responsibility for this crime as evidenced from his guilty plea. He understands the serious nature of his crime and knows that he must leave his old lifestyle behind to make something of his life. Mr. Wiggins desires to change his life, and as a result, the public has already been protected from further crimes by Mr. Wiggins through this case and through his current incarceration.

D. *Rehabilitation - to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.*

Finally, the sentencing goal of rehabilitation already has been met in this case and continuation of that goal will be facilitated through a sentence of less than the recommended 151 months by the Federal Sentencing Guidelines. Mr. Wiggins has already made steps to rehabilitate himself when he entered into detox and followed that by outpatient treatment. Mr. Wiggins has accepted the seriousness of his errors and is eager to turn his life around. He looks forward to the day when he can start working again to provide for his children and he is eager to be a part of the lives of his children. A sentence of less than 151 months will provide a reward for Mr. Wiggins positive efforts to rehabilitate his life and it will permit him to be a positive force for his family and in society at the earliest possible moment.

A sentence of less than 151 months will still leave plenty of time to continue the rehabilitation of Mr. Wiggins. Furthermore, Mr. Wiggins is presently serving a nine year sentence in State custody. On July 22, 2003, Mr. Wiggins plead guilty to sale of narcotics which resulted in the imposition of a nine year sentence.

## CONCLUSION

The sentencing goals that Congress sought to attain through the Federal Sentencing Guidelines are met in this case with a sentence of less than 151 months. The Federal

Sentencing Guidelines are merely advisory and it is left to the discretion of the sentencing judge whether to deviate from them. In doing so, the sentencing just must decide what sentence is sufficient, but *not* greater than necessary to comply with the factors set forth in Section 3553(a)(2). In this case a sentence of less than 151 months would be sufficient to comply with these factors. For the foregoing reasons, Mr. Wiggins respectfully requests that the court depart downward in sentencing him, or, at a minimum, sentence him to the low end of the guideline range.

DEFENDANT,

NORMAN WIGGINS

By _____

Walter Hussey, Esq.

## **CERTIFICATION**

This is to certify that a way of this motion has been mailed to the following counsel of record as well as sent by facsimile:

The Office of the United States Attorney
H.Gordon Hall, Esquire
157 Church Street, 23rd Floor
New Haven, CT 06510

Walter D. Hussey